**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LUTIA MIDCALF, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROLONG LAB LLC d/b/a GENTLE PATCHES,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lutia Midcalf ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Prolong Lab LLC d/b/a Gentle Patches ("Gentle Patches," or "Defendant") and states:

## NATURE OF THE ACTION

1. Defendant develops, distributes, markets, and sells transdermal wellness patches under the "Gentle Patches" brand, which contain natural ingredients and are advertised as a simple and holistic alternative to prescription medications. Plaintiff's putative class action complaint concerns Defendant's marketing and sale of just one type of its patches, the "GLP-1 Patches," which Defendant now sells online as "Berberine Patches," but which continue to be shipped to consumers in packaging labeled "GLP-1 Patches" (collectively referred to herein as the "GLP-1 Patches"). Defendant's fraudulent conduct is two-fold: Defendant falsely and deceptively misrepresents to consumers that its GLP-1 Patches (1) contain, produce, or support "GLP-1" and

(2) provide the well-known benefits of weight loss, decreased appetite, and reduced cravings, when in fact, they do not contain any GLP-1 and do not work as advertised.

2. GLP-1, or "glucagon-like peptide-1," is a natural gut hormone created in the body that is responsible for regulating blood sugar, slowing digestion processes, and reducing appetite. However, when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes—two of the most serious chronic diseases permeating the U.S. population.

3. As a result, FDA-approved prescription medications are routinely prescribed to treat these all-too-common conditions. GLP-1 receptor agonists, or synthetic forms of the GLP-1 hormone, mimic the same bodily processes as the innate GLP-1 hormone, albeit in a more effective manner with higher potency, making GLP-1 agonists an extremely effective weight loss tool.

4. The weight loss industry is a billion-dollar business boosted by skyrocketing sales of injectable GLP-1 weight loss medications, like Ozempic (semaglutide) and Mounjaro (tirzepatide), which have become popular household names. Supplement manufacturers like Defendant have capitalized on this hype and the public's "GLP-1" name recognition at the expense of unknowing consumers who are unsavvy to the nuances of how this natural hormone and its agonists do (and do not) work.

5. In lieu of these FDA-approved medications, Defendant touts its GLP-1 Patches as a natural product designed to support GLP-1 production, appetite control, and weight management. On the front label of the product packaging, directly beneath the prominent product name "GLP-1 Patches," Defendant represents that the patches are "Weight Management Patches" that "Support[] Natural GLP-1 Production" and "Help[] Manage Cravings." On its website and in

publicly available marketing materials, Defendant further promises consumers that the GLP-1 Patches provide premium weight management support, as detailed below.

6. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the GLP-1 Patches do not contain any of the actual active GLP-1 hormone or a GLP-1 receptor agonist whatsoever, do not support natural GLP-1 production, and do not provide consumers with any of the advertised weight management benefits. Instead, upon information and belief, Defendant's GLP-1 Patches contain herbal extracts such as berberine and cinnamon, which are plainly ineffective at providing the same benefits as the GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery, which is an ineffective, if not an impossible, delivery system for these ingredients.

7. Defendant's strategy to create a line of GLP-1 Patches for sale in the supplement market is not accidental. Capitalizing on the public's heightened intrigue for these medications and possible natural alternatives, Defendant has developed, distributed, marketed, and sold the GLP-1 Patches in the online marketplace, including to consumers in Illinois, targeting health-conscious consumers who desire attaining the positive weight management benefits associated with the infamous weight loss drugs.

8. Growing consumer fascination and desire for holistic alternatives to synthetic drugs has spurred in light of several factors like limited access to healthcare, increased costs for filling prescription medications, and greater transparency of ongoing developments in scientific literature and clinical trials illustrating the dangerous side effects of long-term prescription drug use. Consumers purchase Defendant's GLP-1 Patches in hopes that they will receive the positive attributes commonly associated with GLP-1 without any of the aforementioned obstacles, costs,

or drawbacks. In reality, however, because the GLP-1 Patches do not contain GLP-1 and cannot deliver its benefits as advertised, consumers do not receive any of the promised health benefits.

9. Plaintiff and those similarly situated Class Members were exposed to and deceived by Defendant's misrepresentations that the GLP-1 Patches contained or supported GLP-1 and would provide the advertised weight management and appetite control benefits associated with GLP-1 medications when deciding to purchase the patches. Plaintiff and Class Members would not have purchased the GLP-1 Patches absent Defendant's misrepresentations regarding the composition and efficacy of the GLP-1 Patches. Plaintiff and Class Members suffered actual damages as a result of Defendant's false and misleading advertising, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*., and Illinois common law.

## PARTIES

10. Plaintiff Lutia Midcalf is a citizen and resident of Chicago, Illinois.

11. Defendant Prolong Lab LLC, doing business as Gentle Patches, is a limited liability company organized under the laws of the State of Wyoming with its principal offices located in Sheridan, Wyoming. Defendant markets and sells its products under the "Gentle Patches" brand, including through its website, gentlepatches.com.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (6), because this is a class action in which the aggregate claims of the putative class members exceed $5,000,000, exclusive of interest and costs; there are more than 100 members of the proposed Classes; and at least one

member of the proposed Classes, including Plaintiff, is a citizen of a State different from Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its activities at Illinois and this District, including by marketing, selling, and shipping its GLP-1 Patches to consumers in Illinois, such as Plaintiff in Chicago; committed the wrongful acts alleged herein in Illinois; regularly conducts business in this District; and Plaintiff's claims arise out of and relate to Defendant's Illinois-directed conduct.

14. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District: Plaintiff resides in this District, viewed Defendant's representations in this District, purchased the GLP-1 Patches in this District, and received the GLP-1 Patches at her home in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Background of GLP-1 and its Role in Metabolic Diseases

15. GLP-1, or "glucagon-like peptide-1," is a hormone naturally produced in the small intestine that is primarily responsible for the body's regulation of blood sugar levels, but also aids in various weight management mechanisms, such as slowing digestion, curbing cravings, and controlling appetite.[1]

16. Specifically, when the body releases natural GLP-1 after eating, it communicates with several organs, including the brain to decrease feelings of hunger; the stomach to increase feelings of fullness by slowing gastric emptying; and the pancreas to release insulin and suppress

---

[1] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

glucagon secretion, which overall decreases blood sugar levels by moving glucose from the blood and into the cells for energy use.[2]

17. Since GLP-1 acts "as a food thermostat in your gut," when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes.[3]

18. Enter GLP-1 agonists, which are a class of pharmaceutical medications that mimic the body's natural GLP-1 hormone that "bind" to the body's GLP cell receptors to trigger the same effects and play the same role as the body's GLP-1 hormone.[4] Stated another way, prescription GLP-1 medications are heroized as "game changers in both obesity and diabetes management" given their unparalleled efficacy in slowing digestion, curbing appetite, and losing weight.[5]

19. For this reason, pharmaceutical companies sell FDA-approved prescription medications to treat these metabolic conditions, such as Ozempic (semaglutide) and Mounjaro (tirzepatide), which are injectable medications delivered subcutaneously (in fatty tissue under the

---

[2] GLP-1: The Naturally Produced Hormone, General Pharmacy Compounding, Wellness Works, September 4, 2024, available at https://www.pccarx.com/Blog/glp-1-the-naturally-produced-hormone.

[3] Sarah Williams, GLP-1s 101: What the science says about weight loss, side effects, safety, Stanford Medicine News Center, June 29, 2026, available at https://med.stanford.edu/news/insights/2026/06/glp1s-101-weight-loss-wegovy-ozempic-zepbound-side-effects-safe-use.html.

[4] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.

[5] Jessica Migala, Can You Boost GLP-1 Naturally?, WebMD, medically reviewed by Neha Pathak, MD on July 26, 2024, available at https://www.webmd.com/obesity/features/natural-glp1-boosters.

skin) via needle and syringe,[6] and Wegovy (semaglutide), which is now also available in tablet form to be taken orally.[7]

20. A survey conducted by the Gallup National Health and Well-Being Index reports that U.S. adult usage of GLP-1 medications for weight loss has quadrupled since 2024—from 3% in 2024 to 11% in 2026.[8]

21. However, Americans today face many obstacles in attaining access to affordable health care and prescription medications. Polling reports illustrate that approximately 59% of U.S. adults are worried about being able to afford prescription medications, while approximately 43% of adults have failed to take their medication as prescribed due to costs, and have resorted to other cost-saving measures such as skipping doses and purchasing over-the-counter drugs instead.[9]

22. Excessive costs are even more of a concern for GLP-1 medications, which can run consumers anywhere from $900 to $1,400 per month without insurance.[10]

23. It is no surprise, then, in a world where metabolic diseases like type 2 diabetes and obesity are prevalent amongst adults and children alike,[11] the appeal for affordable and accessible GLP-1 boosting products in the consumer marketplace soars.

---

[6] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.
[7] How do I take Wegovy pill?, Wegovy, available at https://www.wegovy.com/obesity/starting-wegovy/starting-wegovy-pill.html.
[8] Dan Witters, In U.S., GLP-1 Usage Reaches New High, Gallup, July 7, 2026, available at https://news.gallup.com/poll/712157/glp-usage-reaches-new-high.aspx.
[9] Audrey Kearney, et al., Public Opinion on Prescription Drugs and Their Prices, KFF, published March 31, 2026, available at https://www.kff.org/health-costs/public-opinion-on-prescription-drugs-and-their-prices/.
[10] Carley Prendergast, GLP-1 Costs: Semaglutide, Tirzepatide and Compounded GLP-1s Prices, Forbes, June 1, 2026, available at https://www.forbes.com/health/weight-loss/glp-1-costs/.
[11] Type 2 Diabetes, U.S. Centers for Disease Control and Prevention, May 15, 2024, available at https://www.cdc.gov/diabetes/about/about-type-2-diabetes.html; Adult Obesity Facts, U.S. Centers for Disease Control and Prevention, May 14, 2024, available at https://www.cdc.gov/obesity/adult-obesity-facts/.

24. As Dr. Melanie Jay, director of the NYU Langone Comprehensive Program on Obesity Research, has noted, consumers become "desperate" for effective weight loss medications and as demand for these drugs exponentially rises, "it creates openings for people to exploit that demand."[12] Defendant is just one of those companies exploiting the craze of effective weight loss medications at the expense of unknowing consumers.

**B. Defendant's Advertising and Marketing of the GLP-1 Patches**

25. Defendant sells transdermal wellness patches under the "Gentle Patches" brand through its official website, gentlepatches.com. Defendant's transdermal patches are adhesive stickers that supposedly work by delivering ingredients through the wearer's skin. Defendant's website claims: "It's Just Science. Transdermal technology is the silent breakthrough of the 21st century. Now thousands can affordably recover their health just through the skin."[13]

26. In or around 2025, Defendant began marketing and selling the GLP-1 Patches on its website under the product name "GLP-1 Patches – Premium Weight Management Support."[14]

27. On the front and center of the GLP-1 Patches' product packaging, in the largest text most noticeable to consumers is the bolded, black label "**GLP-1** PATCHES" contrasting against a stark white background.

---

[12] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.
[13] Gentle Patches, https://gentlepatches.com/ (last accessed October 27, 2026).
[14] Gentle Patches, GLP-1 Patches – Premium Weight Management Support, available at https://gentlepatches.com/products/glp-1-patches-premium-weight-management-support, archived September 20, 2025 (last accessed October 27, 2026).




28. Directly beneath the prominent "**GLP-1** PATCHES" label, Defendant's packaging represents that the product consists of "**WEIGHT MANAGEMENT PATCHES**" and that the patches "Support[] Natural GLP-1 Production" and "Help[] Manage Cravings."

29. In the online product listing on Gentle Patches' website, Defendant states the GLP-1 Patches "offer a breakthrough in weight management—no pills, no messy routines. Just apply one patch daily and let our premium formula work naturally with your body to help curb cravings, support metabolism, and encourage consistent progress over time."[15]

30. Defendant's packaging thus expressly links the product's identity ("GLP-1") and function ("Weight Management," "Supports Natural GLP-1 Production," and "Helps Manage

[15] *Id.*

Cravings") to the well-known effects of the GLP-1 hormone and GLP-1 receptor agonist medications.

31. Defendant has since begun advertising the same product on its website as "Berberine Patches."[16] That Defendant changed its online product name from "GLP-1 Patches" to "Berberine Patches" does not cure the deceptiveness. Indeed, Defendant continues to ship the product to consumers in packaging prominently labeled "GLP-1 Patches" and bearing the same "Supports Natural GLP-1 Production," "Helps Manage Cravings," and "Weight Management" representations, as Plaintiff's own June 2026 purchase demonstrates. Defendant also continues to market the renamed product expressly for "Weight Loss." Defendant's conduct is therefore ongoing and likely to cause consumers future harm.

32. To illustrate, Defendant's website to date contains numerous false and misleading advertising claims that Gentle Patches' GLP-1 Patches will "curb cravings, promote a more efficient metabolism and support faster weight loss."[17]

33. For example, Defendant advertises that its GLP-1 Patches are "formulated to help activate your body's own metabolic weight loss pathways to help manage weight easier"; "significantly reduce[] random cravings for snacks or junk food, making you feel far more in control of your weight loss journey"; and allow consumers to "skip pills and supplements" in lieu of a patch that "delivers ingredients steadily through the skin for consistent results."[18]

---

[16] Gentle Patches, Berberine Patches, available at [https://gentlepatches.com/products/berberine-patches-premium-weight-management-support](https://gentlepatches.com/products/berberine-patches-premium-weight-management-support) (last accessed October 27, 2026).

[17] *Id.*

[18] *Id.*

34. Defendant's website also misleadingly promises that its GLP-1 Patches deliver "most users" measurable benefits of "reduced hunger," "boost[ed] fullness and balance," and "healthy, sustainable weight progress" over the course of just three (3) months.[19]

35. Additionally, Defendant's website falsely claims that the herbal ingredients in its GLP-1 Patches are "well-known for [their] role in supporting metabolism and blood sugar balance" to "help curb cravings and promote[] a healthy appetite response"; "help[] boost metabolism and promote fat oxidation, while also supporting natural appetite balance"; and "support[] healthy blood sugar levels and insulin sensitivity, which help[] reduce snacking urges and cravings."[20]

36. To gain credibility and further deceptively link the faux efficacy of its GLP-1 Patches to that of approved pharmaceutical medications, Defendant boldly states on its website that its GLP-1 Patches are "Science-Backed"—"To ensure every patch delivers real, noticeable results, we use only research-backed compounds known for their impact on appetite, fullness, and metabolic balance."[21]

37. Defendant's label representations and online advertisements collectively induce consumers like Plaintiff to believe that the GLP-1 Patches contain or meaningfully increase GLP-1 production and will work as effectively as GLP-1 containing and/or GLP-1 receptor agonist medications to provide the advertised weight management and appetite control benefits.

38. Unfortunately, however, Defendant's representations that its patches contain or support "GLP-1" and will work as advertised are nothing but a sham because the herbal ingredients in the patches are not effective at providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

---

[19] *Id.*
[20] *Id.*
[21] *Id.*

39. Indeed, upon information and belief, Defendant's GLP-1 Patches do not in fact contain any GLP-1 or GLP-1 receptor agonist. Instead, as Defendant's own renaming of the product confirms, the patches contain herbal extracts such as berberine, green tea, and cinnamon, to name a few.

40. Throughout the liability period defined below, Defendant has engaged in an advertising and marketing campaign that falsely represents that its GLP-1 Patches contain or support "GLP-1" and thus provide the highly desired weight management and appetite suppressing benefits widely recognized and associated with the GLP-1 hormone or GLP-1 receptor agonist prescription medications.

41. As a result of this deception, Defendant sold numerous units of the GLP-1 Patches through its website and other online channels to consumers throughout the United States and Illinois.

42. Plaintiff and Class Members have been, and will continue to be, deceived or misled by Defendant's deceptive advertising claims. Each Class Member purchased the GLP-1 Patches during the liability period and was exposed to the advertising claims on the GLP-1 Patches packaging and Defendant's marketing materials. Defendant's advertising claim that the GLP-1 Patches contained or supported GLP-1 and would promote weight management and reduced cravings was a material factor in influencing Plaintiff's decision to purchase the GLP-1 Patches.

43. Plaintiff and the Class Members would not have purchased the GLP-1 Patches had they known that they did not contain any GLP-1, would not support GLP-1 production, and would not provide any of the weight management and appetite control benefits associated with GLP-1.

### C. Defendant's Advertising Claims for the GLP-1 Patches Are False and Deceptive

44. Despite this prominent marketing and advertising, and as many medical experts agree, Defendant's GLP-1 Patches do not contain any GLP-1 and do not support healthy weight management and appetite control as promised because their herbal ingredients are ineffective at providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

45. Nicholas Messinger, M.D., clinical pharmacy manager in the weight and metabolism management program at Mount Sinai Health System in New York City, told HealthCentral that "GLP-1 patches are a scam. Companies are trying to profit off the popularity of these medications. But there are no FDA-approved patches that deliver semaglutide or tirzepatide. The only approved formulations are injections and the Wegovy pill."[22]

46. When asked about the legitimacy of these GLP-1 supplements and their advertised claims, C. Michael White, head of the department of pharmacy practice at the University of Connecticut, opined:

> "The marketing seems to suggest that you could get with these natural products, these natural ingredients, the same effect that you can get with GLP-1 agonists, which is simply not the case. And in that way, they are being misleading to people. Some don't even tell you what ingredients are in it at all. And in those products, somebody may actually believe that they are going to get semaglutide or they are going to get tirzepatide."[23]

---

[22] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[23] Hannah Grabenstein, In the gray world of GLP-1 supplements online, health experts urge caution, PBS News, updated on September 3, 2025, available at https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok.

47. Dr. Melanie Jay told TODAY.com that GLP-1 patches, like Defendant's GLP-1 Patches here, are "not the answer" for weight loss because they don't contain actual GLP-1 medications, but only herbal extracts that ultimately lack standardization or seals of approval, creating unknown risks for consumers.[24]

48. Regarding the efficacy of GLP-1 patches for weight loss, Natasha Bhuyan, M.D., board-certified family physician, stated "[n]one of these supplements have any evidence that they can help with weight loss." She explained:

> A closer look at these products shows they often contain ingredients like B-vitamin complex, berberine, cinnamon extract, and L-glutamine. While these supplements have been studied for various potential health benefits, the evidence connecting them to meaningful weight loss—especially when delivered through a patch—is weak. "None of these supplements have any evidence that they can help with weight loss. There are small benefits to these supplements for different reasons." For example, B vitamins may help with energy if a person is deficient. She adds, "Another important factor to remember is that many benefits of these supplements have been studied in the oral doses, but there are limited studies in patch formulations."[25]

49. Similarly, Dr. Alyssa Dominguez, endocrinologist at the University of Southern California's Keck School of Medicine, told Rolling Stone that the doses of the herbal ingredients used in these GLP-1 patches "are super off compared to anything that was in the research studies, like they were giving people 8,000 times the dose of what is in the patch."[26]

---

[24] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[25] Dr. Patricia Varacallo, DO, Do GLP-1 Patches Work? An Expert Doctor Weighs In with the Verdict, The Healthy, A Reader's Digest Brand, August 13, 2025, available at https://www.thehealthy.com/weight-loss/do-glp-1-patches-work-an-expert-doctor-weighs-in-with-the-verdict/.

[26] Fortesa Latifi, Influencers Are Hawking 'GLP-1 Patches.' Do They Work?, Rolling Stone, August 9, 2025, available at https://www.rollingstone.com/culture/culture-features/glp1-patches-influencers-ozempic-1235403902/.

50. Further, even if GLP-1 Patches contained actual GLP-1 medication (they do not), the transdermal patch would be an ineffective delivery system. Sheldon Markowitz, M.D., chief of endocrinology at Episcopal Health Services in New York City, explained to HealthCentral that the effective delivery of GLP-1 via transdermal patch is not just an ineffective system, but it's also "not possible": "Even if a GLP-1 patch had true GLP-1 medications, it's not possible to deliver this medication via that route. These molecules are too large to pass through the skin."[27]

51. C. Michael White echoed these shortcomings: "There are currently no GLP-1 medications that can be absorbed through the skin. The drugs have large molecules that make that very difficult, if not impossible."[28]

52. An article in GlobeNewswire further explained the scientific limitations to the transdermal delivery of herbal ingredients versus pharmaceutical formulations in general:

> Scientific research shows that the skin acts as a strong barrier designed to prevent the entry of most external substances. Effective transdermal delivery of therapeutic compounds typically requires advanced pharmaceutical formulation techniques. These may include penetration enhancers, microneedle systems, or specialized encapsulation technologies developed through extensive research. Prescription transdermal patches, such as nicotine or hormone replacement patches, undergo years of development to achieve consistent and measurable delivery. Herbal wellness patches containing botanical ingredients face different scientific challenges, and published research does not currently demonstrate reliable transdermal delivery of many plant compounds at therapeutic levels.[29]

---

[27] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[28] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[29] Rejuvacare Ozempatch Ingredients Examined: 2026 Verified Consumer Reports of Herbal Weight Loss Patch Formulation Claims, Global Newswire, January 10, 2026, available at https://finance.yahoo.com/news/rejuvacare-ozempatch-ingredients-examined-2026-122800981.html.

53. As illustrated above, whether Defendant's GLP-1 Patches contain or support "GLP-1" and whether they can provide the advertised appetite control and weight management benefits can be determined with objective factual evidence. These are not subjective statements of opinion or puffery; they are specific, measurable representations about the product's composition and function.

54. The deception is in the name of the product itself. Indeed, the advertising and marketing of Defendant's GLP-1 Patches as "GLP-1" patches is in a prominent place, front and center on the label of the product, and demonstrates Defendant's awareness that this claim about the product's composition and its intended benefits is material to consumers.

55. Defendant's deceptive representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions. Defendant's representations are likely to deceive a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

56. In making the false, misleading, and deceptive representations described herein, Defendant knew and intended that consumers would rely on them and purchase a product advertised as containing or supporting "GLP-1" over comparable products that are not so advertised.

57. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for a product that was not what Defendant represented;

b. Were deprived of the benefit of the bargain because the GLP-1 Patches they purchased were different from what Defendant represented; and

c. Were deprived of the benefit of the bargain because the GLP-1 Patches they purchased had less value than what Defendant represented.

58. Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have purchased the GLP-1 Patches at all.

59. Consequently, Plaintiff and the Class Members have suffered actual damages and lost money or property as a result of Defendant's wrongful conduct.

**D. Plaintiff's Experience**

60. On June 4, 2026, while residing in Chicago, Illinois, Plaintiff Lutia Midcalf purchased Defendant's patches from Defendant's website, gentlepatches.com, under Order No. GenP151958. Defendant's order confirmation identified the product as a "Weight Loss Berberine Patches Subscription."

61. Plaintiff paid Defendant a total of $153.74 for her purchase, consisting of $134.96 for the product, $4.95 for shipping, and $13.83 in taxes, as reflected on Defendant's Receipt #1228-4754 dated June 4, 2026.

62. Prior to making her purchase, Plaintiff viewed Defendant's website claims, including that the patches would provide weight loss and weight management support, support GLP-1, and help control appetite and cravings. Specifically, Plaintiff read that the "GLP-1 Patches" would "Support[] Natural GLP-1 Production," "Help[] Manage Cravings," and "support metabolism."

63. Plaintiff purchased the GLP-1 Patches reasonably believing that she was receiving a transdermal patch that would support GLP-1 and provide its associated weight management and appetite control benefits as advertised by Defendant.

64. In making her purchase decision, Plaintiff was exposed to, and reasonably relied on, Defendant's false and misleading representations that the GLP-1 Patches would support GLP-1 and promote weight loss, weight management, and reduced cravings as advertised.

65. However, Defendant's GLP-1 Patches did not work at all for Plaintiff. Specifically, Plaintiff experienced none of the weight loss, appetite control, or reduced cravings benefits as promised by Defendant.

66. Had Plaintiff known that Defendant's GLP-1 Patches did not actually contain any GLP-1 or a GLP-1 receptor agonist, would not support natural GLP-1 production, were ineffective, and would not work as advertised, she would not have purchased the GLP-1 Patches at all.

67. Plaintiff would consider purchasing Defendant's patches in the future if she could rely on Defendant's representations about the products' composition and efficacy, but she cannot do so absent injunctive relief, and she is therefore likely to be damaged by Defendant's ongoing deceptive trade practices.

**E. Online Consumer Complaints About Gentle Patches' GLP-1 Patches**

68. Defendant is well aware of widespread consumer dissatisfaction arising from Gentle Patches' false and misleading advertising of the GLP-1 Patches.

69. Plaintiff's experience is far from being an outlier. Below is just a sampling of the online consumer complaints concerning Gentle Patches' GLP-1 Patches:

a. "The patches are branded as GLP-1 however[ ]The back of the package specifically states there is no GLP-1 components or byproducts of GLP-1. This labelling is very deceiving and frankly should fall under unfair, and deceptive labelling practices." (Trustpilot);

b. It's a scam, do not buy!...These patches do NOTHING to help you lose weight only to lose your money…" (Trustpilot);

c. "They are sold as a means to speed up your metabolism. Cleverly using GLP-1 in the title they make you think it is like the weight reduction drug

you can get from your Dr. They are not, and the ingredients do not work and did nothing for me…They con you with a promise that will never be fulfilled.” (Trustpilot);

d. “Total scam, no GLP ingredients.” (Trustpilot);

e. “I did not feel a difference from the use of this product. It was my understanding that this product was a good substitute for GLP1. I found that it [did] nothing at all.” (Trustpilot);

f. “Disappointed…The product does not work as advertised. Have not lost 1 pound. Does not curb my appetite. Waste of money.” (Trustpilot);

g. “I tried them for six weeks with no results. These patches are over priced stickers with no benefits. I do not recommend this product. Save your money.” (Trustpilot);

h. “They just don’t work. They must be a near invisible dose of GLP…” (Trustpilot).

## PLAINTIFF’S CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH PARTICULARITY

70. Defendant is in the best position to know what content it placed on its website, product packaging, and marketing materials during the relevant timeframe, and the knowledge it had regarding its GLP-1 Patches and related advertising claims. However, to the extent necessary, Plaintiff satisfies the requirements of Federal Rule of Civil Procedure 9(b) by alleging the following facts with particularity:

71. **WHO**: Defendant Prolong Lab LLC d/b/a Gentle Patches falsely, deceptively, and misleadingly advertised to consumers that its GLP-1 Patches contain or support GLP-1 and will provide weight management benefits commonly associated with the actual GLP-1 hormone or GLP-1 receptor agonist medications.

72. **WHAT**: Defendant labeled its product “GLP-1 Patches” and represented on the packaging that the product consists of “Weight Management Patches” that “Support[] Natural GLP-1 Production” and “Help[] Manage Cravings,” and marketed the product online as “GLP-1

Patches – Premium Weight Management Support" and, later, as "Berberine Patches – Premium Weight Management Support." Defendant prominently advertised on its website that its GLP-1 Patches "curb cravings, promote a more efficient metabolism and support faster weight loss," amongst other weight management, reduced appetite, and boosted metabolic benefits. These representations are false, deceptive, and misleading to reasonable consumers because, as many medical experts agree, the GLP-1 Patches do not contain any GLP-1 or GLP-1 receptor agonist and do not support healthy weight management and appetite control as promised because (1) their herbal ingredients are ineffective at providing the same weight loss benefits as a GLP-1 receptor agonist medication, and (2) even if they were effective, it would still be impossible to successfully deliver those ingredients through the wearer's skin via a sticker. Indeed, the GLP-1 Patches did not work whatsoever for Plaintiff.

73. **WHERE**: Plaintiff and Class Members were uniformly exposed to Defendant's deceptive, false, and misleading advertising claims concerning its GLP-1 Patches, which were made on Defendant's website, gentlepatches.com, and on the GLP-1 Patches product packaging.

74. **WHEN**: Defendant engaged in these deceptive and misleading practices throughout the putative class period alleged herein, including on and before June 4, 2026, when Plaintiff was exposed to Defendant's website representations and purchased the product and when Defendant delivered the product to Plaintiff in packaging labeled "GLP-1 Patches."

75. **HOW**: Defendant capitalizes on the trending buzz word "GLP-1" and the public recognition that GLP-1 medications are associated with weight loss, appetite control, and decreased cravings, and exploits reasonable consumers who are unsavvy as to the nuances of how the GLP-1 natural hormone and its agonists do (and do not) work. The deception is in the name of the product Defendant intentionally selected. Defendant induced sales of the GLP-1 Patches by

prominently labeling its patches as "GLP-1 Patches" and by promising that they would support GLP-1 production and provide weight management benefits at a cheaper price and by an easier delivery method than GLP-1 medications.

76. **WHY**: Defendant engages in its deceptive and misleading advertising of its GLP-1 Patches in order to induce Plaintiff, Class Members, and all reasonable consumers who desire achieving weight management and appetite control benefits to purchase its GLP-1 Patches, resulting in substantial profits for Defendant at the expense of consumers who receive zero benefits from using the GLP-1 Patches.

## CLASS ACTION ALLEGATIONS

77. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself, and Classes of similarly situated persons defined as follows:

> **Nationwide Class**: All persons in the United States who, during the applicable statute of limitations, purchased Gentle Patches' GLP-1 Patches for personal, family, or household use and not for resale.
>
> **Illinois Class**: All persons in the State of Illinois who, during the applicable statute of limitations, purchased Gentle Patches' GLP-1 Patches for personal, family, or household use and not for resale.

78. Excluded from the Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, members, managers, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including, without limitation, the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

79. **Numerosity (Rule 23(a)(1))**. The proposed Classes are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the identities of Class Members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Classes are also sufficiently ascertainable because Defendant has the administrative capability, through its online order systems and other business records, to identify all members of the proposed Classes, and such contact information is otherwise not available to Plaintiff.

80. **Commonality (Rule 23(a)(2)).** There are questions of law and fact common to the Classes, the answers to which will drive the resolution of this litigation. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's representations that its patches are "GLP-1 Patches" that "Support[] Natural GLP-1 Production," "Help[] Manage Cravings," and provide "Weight Management" are false or misleading;

b. Whether Defendant's representations are likely to deceive a reasonable consumer;

c. Whether Defendant's representations are material;

d. Whether Defendant intended that consumers rely on its representations;

e. Whether Defendant engaged in deceptive or unfair acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

f. Whether Defendant engaged in deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act;

g. Whether Defendant was unjustly enriched;

h. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages;

i. Whether Plaintiff and the Classes are entitled to injunctive, declaratory, or other equitable relief; and

j. Whether Plaintiff and the Classes are entitled to reasonable attorneys' fees and costs.

81. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of the other Class Members in that they arise out of the same uniform packaging and advertising representations and the same wrongful business practice by Defendant, as described herein.

82. **Adequacy of Representation (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent the interests of the proposed Classes in that she has suffered damages because of Defendant's improper business practices. Additionally:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and the unnamed Class Members;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

83. **Predominance & Superiority (Rule 23(b)(3))**. Common questions of fact or law concerning Defendant's liability to all Class Members predominate over any questions affecting only individual Class Members. Whether Defendant's uniform statements were false or misleading is a common question capable of class-wide resolution. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class

Members' individual claims before the Court, especially where, as here, individual Class Members' damages are relatively small. Class treatment permits many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

84. **Final Declaratory or Injunctive Relief (Rule 23(b)(2))**. Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

85. **Particular Issues (Rule 23(c)(4))**. Plaintiff's claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, et seq.**
**(On Behalf of Plaintiff and the Illinois Class)**

86. Plaintiff realleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

87. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false

promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

88. Plaintiff and the Illinois Class Members are "consumers" and "persons" within the meaning of 815 ILCS 505/1(c) and (e). Defendant is a "person" within the meaning of 815 ILCS 505/1(c). Defendant's marketing, advertising, offering for sale, and sale of the GLP-1 Patches constitute "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

89. Defendant engaged in deceptive acts and practices in violation of 815 ILCS 505/2 by labeling, marketing, and selling its patches as "GLP-1 Patches" that "Support[] Natural GLP-1 Production," "Help[] Manage Cravings," and provide "Weight Management" and "Weight Loss" benefits, when the patches contain no GLP-1 or GLP-1 receptor agonist and instead contain herbal ingredients that are ineffective at providing the advertised benefits, and in any event, cannot deliver those benefits via transdermal delivery. These representations are literally false and, at a minimum, likely to mislead a reasonable consumer.

90. Defendant's representations concern the composition, characteristics, and efficacy of the product—specific, objectively verifiable facts—and are not mere puffery.

91. Defendant also violated 815 ILCS 505/2 by engaging in practices described in Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, as alleged in the Second Cause of Action below.

92. Defendant intended that Plaintiff and the Illinois Class Members rely on its deceptive representations, as evidenced by its decision to place the "GLP-1" product name and

associated weight management claims front and center on the product packaging and in its online product listing.

93. Plaintiff and the Illinois Class Members were exposed to Defendant's misrepresentations and purchased the GLP-1 Patches after being exposed to them.

94. Defendant's deceptive acts proximately caused actual damages to Plaintiff and the Illinois Class Members. Plaintiff and the Illinois Class Members paid for a product that was worth less than represented and did not deliver the promised benefits, and they paid a price premium attributable to Defendant's misrepresentations.

95. Defendant's conduct is also unfair within the meaning of the ICFA because it offends the public policy of truthful advertising, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers.

96. Pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Class Members seek actual damages, punitive damages in light of Defendant's knowing and willful conduct, injunctive relief, reasonable attorneys' fees and costs, and such other relief as the Court deems proper.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1, et seq.**
**(On Behalf of Plaintiff and the Illinois Class)**

97. Plaintiff realleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

98. Defendant is a "person" within the meaning of 815 ILCS 510/1(5).

99. Under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), a person engages in a deceptive trade practice when, in the course of his or her business, the person, among other things, "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," 815 ILCS 510/2(a)(5); "represents

that goods or services are of a particular standard, quality, or grade . . . if they are of another," 815 ILCS 510/2(a)(7); "advertises goods or services with intent not to sell them as advertised," 815 ILCS 510/2(a)(9); or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding," 815 ILCS 510/2(a)(12).

100. Defendant violated 815 ILCS 510/2(a)(5), (7), (9), and (12) by representing that its patches are "GLP-1 Patches" that "Support[] Natural GLP-1 Production," "Help[] Manage Cravings," and provide "Weight Management" and "Weight Loss" benefits, when the patches do not contain GLP-1, do not have those characteristics, ingredients, uses, or benefits, and are not of the represented standard or quality.

101. "A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required." 815 ILCS 510/3.

102. Plaintiff and the Illinois Class Members are likely to be damaged by Defendant's ongoing deceptive trade practices. Defendant continues to sell the same product online as "Berberine Patches – Weight Management Patches" that bear the same misrepresentations.

103. Plaintiff and the Illinois Class Members therefore seek an order enjoining Defendant from continuing its deceptive trade practices, including requiring corrective labeling and advertising, and, because Defendant willfully engaged in these deceptive trade practices, an award of costs and attorneys' fees pursuant to 815 ILCS 510/3.

## THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the Illinois Class)**

104. Plaintiff realleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

105. This claim is pleaded in the alternative to the extent required. Under Illinois law, a plaintiff states a claim based on unjust enrichment by alleging "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (Ill. 1989)). Where, as here, unjust enrichment arises from deceptive conduct actionable under the ICFA, a request for restitution based on unjust enrichment proceeds with the statutory claim. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019).

106. Defendant enticed Plaintiff and Class Members to purchase its GLP-1 Patches through its false and misleading advertising concerning the composition, efficacy, and weight management benefits of its GLP-1 Patches.

107. Plaintiff and the Class Members conferred a benefit on Defendant in the form of payment for the GLP-1 Patches.

108. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted and retained said benefits through its fraudulent conduct, to the detriment of Plaintiff and the Class Members, which under the circumstances violates the fundamental principles of justice, equity, and good conscience.

109. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the fraudulent conduct alleged herein.

110. Plaintiff and the Class Members, therefore, seek restitution and disgorgement of all wrongfully obtained money received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

a. Certifying the proposed Classes under Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing Plaintiff's counsel as class counsel;

b. Declaring that Defendant's conduct alleged herein violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.;

c. Enjoining Defendant from the deceptive conduct described herein pursuant to 815 ILCS 505/10a and 815 ILCS 510/3, including requiring corrective labeling and advertising;

d. Awarding actual damages and punitive damages pursuant to 815 ILCS 505/10a, in amounts according to proof;

e. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

f. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs of suit pursuant to 815 ILCS 505/10a(c), 815 ILCS 510/3, and as otherwise permitted by law; and

h. Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demands a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: October 27, 2026

**KALIELGOLD PLLC**

By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel
*jkaliel@kalielpllc.com*
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

Sophia G. Gold (*pro hac vice* to be filed)
*sgold@kalielgold.com*
Amanda J. Rosenberg (Ill. Bar No. 6315494)
*arosenberg@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Putative Classes*